on behalf of Bert F. Bryan and Director, Office of Coal Compensation Programs and others. Arguments not to exceed 15 minutes for the petitioner. Mr. Sukup for the petitioner. Thank you. Can I reserve three minutes for a vote, please? You may. Thank you, Counsel. May it please the Court. Jeffrey R. Sukup for Allen Creek Coal Company. Your Honors, I'm in kind of the unusually helpful situation of having seen some of the Court's concerns on this very issue. With your permission, I'd like to just kind of direct my and your attention to some of those concerns that you've brought before in the brief. That would be great. The first thing I'd like to mention is there seems to be either some confusion or some disagreement amongst the parties about the scope or the holding of Jones Brothers. I would submit that Jones Brothers really has a two-part holding. First, the question is whether a party needs to bring a legal issue before the agency in the first place. If they do, it's forfeited. If they don't, it's not forfeited. Step two or part two of the holding is if the Court determines that the parties did need to bring the issue before the agency and it is forfeited, the question then is whether we should excuse that forfeiture. Now, here I would stipulate that in light of the Wilkerson case, which you discussed, I probably cannot make a good faith excusing a forfeiture argument. I think that probably rules that possibility out. Regardless, the issue here turns on whether the parties, in this case Allen Creek, had to bring the issue of the appointments clause matter to the Benefits Review Board in the first place and not whether it's forfeited. Well, in Jones Brothers, just to break that one down into two categories, we said if it's a facial challenge, you don't, but if it's an as-applied, you do. That is correct, yes. And in your brief, you seem to argue it's a facial challenge, but how is it a facial challenge? It seems to me the statutory authority, which is the APA, provides a permissible means to comply with Lucia. Well, it's a facial challenge because, unlike in Jones Brothers, and if I could compare the two, I could probably explain this better. In Jones Brothers, the court determined it was an as-applied challenge because the statute there, the Mine Act, vested appointment authority directly in that reviewing agency body, the Federal Health Safety and Review Commission. So they can correct the problem simply by applying the statute and using their own express authority to appoint ALJs and correct the Lucia problem. Here there is no statute vesting the Benefits Review Board with the authority to appoint ALJs. So they cannot simply, when presented with an appointments clause problem, they could not say, well, we can fix this by appointing a properly appointed ALJ pursuant to our own authority. No, but they can fix it by doing what they've been doing, which is remanding the case to a new ALJ. Except the problem is that, as Mr. Waldman explained during his argument in the previous case, when they were remanding the case prior to Lucia, the Board and the ALJs on remand were not reassigning the cases to new ALJs for a new hearing. But that's a problem with the process because you said the second time, I agree that's bizarre, but the second time up, they did, right? But only because that is when, by that time, Lucia had already been decided in the court held that as a constitutional matter, the remedy is not just remanding to a new ALJ. You have to get a new hearing before a new ALJ. And all the cases that the Director... But when you remanded to the ALJ in the first instance, which is what Lucia eventually said was not appropriate, it gave rise to another appeal mechanism that then did allow them to correct the problem, even after Lucia. Am I right about that? You're correct. But essentially then what the government is saying is that the solution to the problem is to create another round of appeal that accomplished nothing. I agree with that. That's bizarre. But they can do that. There's nothing improper in that, right? They can have you appeal six times. You can complain about the process, but this isn't a complaint about the process, right? This is a complaint that they didn't have the authority, and they ultimately did have the authority. Well, really, it's two arguments. One, my argument is, yes, that they don't have the authority, because I would submit that Jones Brothers states that the authority in question, the remedy in question, is that the agency has to have the statutory authority to appoint an ALJ. What statute is facially unconstitutional? Well, it's less a statute and more about the regulations and the department procedures, because... And so in Guybus in 1984, we said that regulations and procedures can be challenged within the agency and the board can remedy them. The Guybus court said that the board can set aside a regulation that is not in compliance with the Black Lung Benefits Act. Here the argument is a lot broader than that. I don't think... There's no case that I have found and the directors identified that said the board has the authority to set aside regulations that may comply with the Black Lung Benefits Act, but are unconstitutional under either a Supreme Court decision or under the Constitution as a whole. You take issue with the Department of Labor's position that the board routinely looks at constitutional issues and other issues? The board looks at constitutional issues, but the remedy... Not that remedy is the wrong word, but the scope of those issues is rather limited. If they're... I'm sorry to interrupt you, counsel, but imagine this hypothetical. Take it out of this context. They're applying a law through their regs and practices in an unconstitutional manner. Okay? Let's just... Whatever you want to say. They're not giving due process. Surely the board can say the way in which we're doing this is unconstitutional, so that reg or that practice is impermissible. But the board would have to limit itself to a regulation that it has the jurisdiction or authority to review. For example, if there's a black lung regulation that says appoint ALJs in Manor A and the government is instead appointing them in Manor B, then yeah, it's possible that the court, the board could look at that and say, well, this is totally contrary to what the regulations that we are in charge of administering are saying, so we have to set that aside. Here there is no statute or regulation within the Black Lung Benefits Act that directs the proper appointment of the judges. So the board, under the board's precedent in the Guybus case, there really isn't a ground for extending the board's jurisdiction to set it aside. Does that mean that the board has been acting ultra-verus by appointing these new ALJs because there's no authority for the board to do so even post-Lucia? The board has not been appointing ALJs. Well, excuse me, remanding to new ALJs because of the constitutional problem? No, they can remand. It's just that it would be ultra-verus if they were appointing ALJs or if they were perhaps setting aside a regulation or a statute outside of the Black Lung Benefits Act to conform to the Constitution. But isn't, aren't they, the mere fact that they are remanding on the basis of this constitutional problem suggests that the statutory scheme gives them the authority to address the constitutional problem. Otherwise, they shouldn't be remanding and all these cases should be coming up to the courts for us to remand. Well, I don't think it goes that far. I don't think that suggests that the board has, or at least that the courts recognize the board has a, you know, broad-stretching authority to fix any constitutional problem that comes before it. They can remand if they think there might be a problem that a lower court could address. But the problem is, on all these cases, that remedy was not being implemented. There's a remand being issued, but there's, the constitutional remedy that the Supreme Court said was necessary was never being implemented until Lucia was decided. Let me ask you a question. Sure. The, according to the government's brief, and I didn't go validate this so you can correct me if I'm wrong. In December of 2017, they ratified all these ALJs. The secretary did, yes. The secretary did. So when they remand them in 2018 to the ALJs, right, I know there's a ratification issue, but assume they remanded them to a properly appointed ALJ, there's no problem then, right? So even if it's the same ALJ, and now they're properly appointed and they decide the case, is there a problem? The problem is it's not retroactive. Even if an ALJ later on issued a new decision, he held a hearing on the merits before his ratification. Certainly in this case, and I think also in the previous case. And the director, even the director has asserted in briefing before the board that when you have that situation, that doesn't apply with Lucia. Or the- What if he held a new hearing, same ALJ, holds a new hearing, now properly appointed? No. It's not enough, because Lucia held you have to have a new ALJ entirely, not just a new hearing. So in the absence of that, that would not constitute a proper constitutional remedy. And that, in fact, was what the board was doing. They were remanding to the same ALJ, not even a new hearing. And interestingly enough, in all these cases, I was able to find nine of them through my own research. In all the cases where the board remanded pre-Lucia to the same ALJ, sure enough, the ALJ just issued a forum opinion saying, I adopted my own opinion. That was one of the concerns that the Lucia court itself expressed in deciding that we need to have this to go to a new ALJ, because there's a strong possibility he'll just, the old one will do the same thing. That is why the government's proposed remand remedy is not a remedy at all. I mean, at most, all it would do is create another round of appeals, which wastes the party's time, resources, and doesn't resolve anything. Couldn't you bring up in front of them on the initiative that you not only want to remand it, but you want a new ALJ? It seems to me you can always request that. Well, to be, for one thing, I don't, just to be honest, I have not seen the briefs for those cases where the remand, so I'm not, I can't explain whether or not it was raised or not at that particular point. What I do know, though, is that whether that request was raised or not, the board wasn't doing that. They seem to be of the opinion that this really is all that is needed. Since they've been ratified, all the problems have been solved. Well, no, all the problems have not been solved, because even if you deem the ratification enough to have the judge issue a new decision and order on remand, the evidence has been received before, the hearing has been held before, that judge has seen the claimant testify before, and that means that's not enough for remedy. We sort of got distracted here by you picking up where the earlier argument left off. So rather than consuming your entire time on that narrow little question, let's go back to the broader question. Given the ratification by the secretary back in December, why didn't you anticipate this issue? Well, the reason, I guess the reason we did not raise it is because we were waiting to see what Lucia would decide on that question. It was ultimately resolved. Well, why not preserve it? I mean, you're saying you were aware. You're aware of the ratification, you're aware of Lucia. Presumably you can go on any website and get the briefs in Lucia and see what they're requesting. Why not raise it? Why is it incumbent at that point that you raise it? I suppose the party, I suppose I could have raised it as a place-holding matter, but I mean I... So let's assume you should have raised it then. Do you have any different argument about why there are extraordinary circumstances in this case that we should look upon to excuse that? You mean if we should have raised it, meaning it's forfeited? Yes. To be perfectly candid, if Wilkinson had not been decided, I would be here making a excuse the forfeiture argument. I think those arguments were brought up directly addressed in Wilkinson and I, on the basis of Jones Brothers and Wilkinson, I don't think I can in good faith make an argument that the forfeiture can be excused. My argument is entirely on forfeiture. So then we're down to the merits, aren't we? Well, we're down to forfeiture. I mean, if it's forfeited, you have to decide under Jones Brothers whether the forfeiture can be excused. If it's not forfeited, meaning it's a facial challenge that did not need to be raised before the board in the first place, we don't even get to excusing a forfeiture because there's no forfeiture in the first place. My argument is that's not forfeited. Can I ask you one question about the excuse? Because it seems to me the argument someone made, I don't know whether Judge Murphy asked the question or your friend on the other side in the other case has said this, but it seems to me one argument is, well, in Jones Brothers, they just raised it in a line and they didn't really raise it. They just noted a circuit split and that wasn't forfeited. That was excusable. So why isn't a motion for reconsideration better? I'm trying to help you out here. Why isn't a motion for reconsideration better than what they did in Jones Brothers? Well, it's better on the ground that if you just drop a line, as in Jones Brothers, about, well, this issue is out there, by the way, hint, hint, and petition for reconsideration, you were at least bringing it before the board and arguing the merits of the case. The reason the board did not deem that to be enough is because their own internal rules, much like this court, are that you're not ordinarily supposed to be able to raise a new issue in a reconsideration. I think that does take it a step away from the Jones Brothers situation where that was deemed forfeited. Here, it's at least argued on the merits, and I would just state, if I could just finish here, my time is up. I would just state more importantly, the distinction, the key distinction between this case and the agency in Jones Brothers is that this agency does not have the ability to remedy the problem by appointing its own ALJs, because there is no statutory authority to do that. That agency in Jones Brothers could, so forfeiture was appropriate there, but not here. Thank you, counsel. Thank you. May it please the court, I will take five minutes, and the remainder of the time is for the co-counsel. My name is Brent Johnson. I represent the claimants in this case. Mr. and Ms. Bryan, Mr. Bryan died in the process after filing a claim that was denied. He later filed a motion for modification, which was sustained in the process. That's when he died. His wife took over in her place, so the background is this case now being in her name as one, a surviving spouse, and two, applying for benefits and as a widow. Two issues, the Lucia issue, the Lucia issue will be addressed by the Solicitor's Office. I'm going to briefly, five minutes worth, talk to you about the benefits package in this case. In this case, the claimant in his modification case, the judge found, BRB, field office, as well as the judge, found that the coal miner had at least 16 years of underground employment. I think it was actually 17, but it stipulated 16. The 15-year presumption applies. He smoked for about 38 years, which is heavy smoking, and the ALJ found legal pneumoconiosis, but not clinical. The ALJ found entitlement, relying upon the opinions of Dr. Shabda, who is a government doctor, who found he was disabled from black lung, Dr. Hauser, who reviewed the record, and also from Dr. Baker, who filed his opinion as well. The other two opinions were Drs. Tudor and Hippenstiel, which the judge reviewed their records, dissected their opinions, and found that they were not credible. End result was that the 15-year presumption led to a conclusion, because he had at least 15 years under the act of presumptive disability. If you fail one of the tests, you're entitled to benefits, causing the coal company to then have to rebut and prove that it was something else. The opinions of Drs. Tudor and Hippenstiel tried to prove it was something else, disavowed any connection with coal mine dust exposure, even though there was at least 16 years stipulated coal mine dust exposure underground, the worst place for the dust. The judge discussed the merits of each of the doctors in detail, Dr. Sood, Dr. Baker, and Dr. Hauser, all of whom opined total disability from pneumoconiosis. Dr. Hippenstiel and Dr. Tudor sort of forgot black lung was even involved in the case. It was all something else, and black lung exposure for 16, 17 years was essentially ignored. How would you interpret Dr. Chavda's, he originally diagnosed in legal pneumoconiosis, but then apparently on cross-examination, suggested that smoking was the main cause. He did say that. There's a line about coal dust may have aggravated, did he, how would you interpret that? I would interpret him saying there's dual causation, there's disability caused by smoking and disability caused by coal mine dust. There's nothing in the law that says black lung is caused or worse, not made worse by other factors. And he was saying there's, you get the same results from irritants, smoke and coal dust, each of which are indistinguishable in the lungs when you deal with them, and you can make a legitimate opinion, medical opinion, that both were causative factors. In this case, he opined that the coal dust was the factor that disabled him under the act. Your argument here simply is that the doctors that favored the coal company didn't explain away why coal dust wasn't an additional or contributing factor, and therefore they lose. Is that it? This court has issued... Is that it? Essentially, yes. Okay. Thank you. This court has issued the rule out rule, and there's two or three in my brief that cites the cases. You have to rule out coal dust as a causative factor. In this case, they made no... So they said that smoking might have been a greater cause, a bigger cause, but they didn't rule out coal dust. They said nothing about coal dust, they said it's not caused by coal mining. That's essentially it. I've got 49 seconds left, so I'll try to speed along. There you go. Anyway, the bottom line is the big issue in this case, like the last case, is the Lucia issue, and that's an issue that whatever decision you make is going to affect a whole lot of cases across the Sixth Circuit. In this case, as we explained, it was an issue that was waived on multiple occasions, and I will yield any time I have left to my co-counsel. Thank you, counsel. May it please the court. I'm Ed Waldman, representing the Director, Office of Worker Compensation Programs, United States Department of Labor. A motion for reconsideration is not better than what the petitioner did in Jones Brothers for the following reason. In Jones Brothers, the petitioner there, before the agency, raised the Appointments Clause issue at the first possible opportunity before the agency. Right. Jones Brothers is accurate in saying all they had is one sentence, right? They had only one sentence, so they didn't argue it. And we routinely hold that as forfeiture. Correct. So why wouldn't a motion for reconsideration be better? I'm not sure. At least they briefed the issue and give the court notice. Right. And I'm saying that the reason is timing. In Jones Brothers, although they raised the issue insufficiently, the point in time at which they raised it was the proper point in time to raise it. So that if they had actually argued it, they would not have waived it. If they had actually argued it. So they still forfeited it in Jones Brothers? Yeah. Okay. Correct. But the point in time at which Island Creek raised it before the Benefits Review Board here was not in their opening brief to the Benefits Review Board at their petition for review. It didn't come until after the Benefits Review Board had already issued a decision on the To be fair, I think in Brian's case, it was one day after your first remand. It was in February of 2018, and I think it was one day after the first remand. So they had no real notice comparable to Jones Brothers in essence that the board could take remedial action. But in this case, there was no question that the board could take remedial action because the board had been adjudicating constitutional questions for its entire existence. And the board also, by the time that Island Creek brought this issue up in the Brian case in May of 2017, litigants had already been raising this issue to the Benefits Review Board for several months, and the board was already remanding. And as we discussed earlier, they were remanding to the same ALJ and without instructions to conduct a new hearing. And the reason... What purpose does that serve? Did you think the ratification was sufficient? Because the ratification doesn't occur until December, and you said they started doing it in May of 2017 just now. So did I miss something there? Or did I mishear you? Maybe I missed something. The Benefits Review Board was remanding to the ALJs, okay, starting in December of 2017 after the secretary issued the ratification. Litigants, however, had been raising the issue to the Benefits Review Board throughout 2017. So in December of 2017, when the secretary ratifies the ALJ appointments is when the board starts remanding. But I have a friend's argument that this is a facial challenge rather than as applied, and so they never forfeited it. Right. So with regard to that issue, I definitely heard this court ask my friend, Mr. Sukup, what they were challenging the facial constitutional validity of. I didn't hear my friend, Mr. Sukup's, answer to that other than regulation, some regulation. I don't know what regulation he's referring to. I'm not aware of any Department of Labor regulations or any other regulations that would have allowed anybody other than the Secretary of Labor to appoint administrative law judges in the Department of Labor. So... Let me ask you, what is the statute that says... So there's a statute that lists qualifying individuals. I think it's... I forget the number, but it says the Secretary of Labor can appoint qualifying individuals to hear cases. And is it the Department of Labor's position that it's that provision or just the normal administrative process under which the secretary appoints ALJs? Judge Murphy, the provision that you're referring to was cited in Island Creek's brief. It's section 422A of the Black Lung Benefits Act, 30 U.S.C. section 932A, and that's A without parentheses. It was a temporary provision. It was sunsetted in 1979. It's no longer on the books. What is the provision today? The provision today is simply the Administrative Procedure Act, which provides that each agency shall appoint as many ALJs as are necessary. And then there's a provision specific to the Department of Labor, 29 U.S.C. section 551, which specifically says that the Secretary of Labor is the head of the department. So if you interpret those two statutory provisions consistent with the appointments clause, obviously it's the secretary who has to appoint the ALJs. Can I just ask a broader question? So I know we have precedent saying exhaustion has to take place here, but there is no statutory requirement. I was curious if it's black, if you know, is a black letter law across the circuits that exhaustion of issues needs to take place before the Benefits Review Board? Yes, your honor, it is. And is that, has any circuit explained why, despite the lack of a statutory exhaustion requirement, the courts have the authority to impose one? It's the doctrine of exhaustion of administrative remedies. So what is this doctrine? Is it a common law? We're interpreting the statute right now. It's a federal common law doctrine, and it's one that serves two primary purposes, which is to correct its own errors, and the agency presumably can... So is it a gloss on this? Generally speaking, we don't think of using policy arguments to interpret statutes. And I'm just curious about the authority of courts to just say, well, we think this is a good idea, even though it's not in the statute, we'll just do it anyways. All I can tell you is that the courts of appeals have uniformly applied exhaustion of administrative remedies in black loan cases. They haven't gotten deeply into the sources. They haven't cited statutory provisions, because there isn't one. They just cite case law and the purposes of the doctrine. The last point I wanted to address in my remaining time is this argument by Island Creek that the Benefits Review Board didn't have the appointment authority, and that somehow converted their argument into a facial constitutional challenge. But the Benefits Review Board had the power to give Island Creek all the remedy it needed, because the Benefits Review Board had the power to vacate the ALJ's decision awarding benefits. And once the Benefits Review Board did that, Island Creek was no longer obligated legally to pay benefits to the Bryans. In fact, with the ALJ's award vacated, that obligation would have fallen on the Black which the Secretary of Labor is one trustee, and that trust fund would have been obligated to pay interim benefits to the Bryans in the meantime. And so if the Secretary needed any incentive to actually provide a properly appointed ALJ to conduct a new hearing, the fact that the trust fund was going to be on the hook to pay these interim benefits was certainly a pretty good incentive to do that. And if for some reason it wasn't, then Island Creek remains off the hook, unless and until the Secretary ever appoints a properly appointed ALJ to conduct a hearing. So Island Creek would never be held liable for benefits, and yet the Bryans would continue to receive their benefits. And so the Benefits Review Board, even though it couldn't appoint its own administrative law judges, had all the power to give a complete remedy to all the parties in the case, not only Island Creek but also the Bryans, that was necessary. Thank you. Your Honor, just two quick points in rebuttal. If the law on exhaustion in these cases were anywhere near as simple as Mr. Waldman says it is, Jones Brothers would be a page long. He's basically contending that regardless of what is said in that case and the facts of this case, it needs to be brought before the Board no matter what. Well, Jones Brothers went through a very long analysis of when it needs to be brought before an agency, and it said it does so in cases of facial challenges not as applied. And I've explained to this Court why it is a facial challenge and not an as applied challenge. Secondly, on that very point, this remand remedy argument that Mr. Waldman says solves everything, and the agency in Jones Brothers had that same power. And yet the Court there didn't focus on that and say, well, the issue here is they could remand. Therefore, it's properly before them. They could address the problem, and they can make that up, and that means it's forfeiture. That somehow never came up in Jones Brothers, and instead what the Court focused on for the purposes of the remedy is whether the agency has statutory authority to appoint its own ALJs. That agency did, and as a result of that, it didn't need to change any law or affect any statute or anything. All the agency would have to do is apply the statute as written, appoint its own ALJs, and fix the constitutional problem. The Board, it is uncontested by everybody that the Board here does not have that power. It could remand, yes, but it was remanding to the same ALJ, which the Supreme Court confirmed is not the remedy that is satisfactory of the Constitution. So what Mr. Waldman is proposing does not fix this case. My second point that I just want to talk about is the constitutional authority of the Board. Again, I'm somewhat reiterating what I said before, but the Board's authority is nowhere near as sweeping as Mr. Waldman applies. Every case I have found in which the Board addresses constitutional issues, the Board was assessing whether a Blacklung or Longshore regulation was consistent with the Blacklung Benefits Act or the Constitution. Here, in order to reach the constitutional issues, as Mr. Waldman says the Board could have, the Board would have to say that either the APA, civil service regulations, department policies, however the Secretary of Labor was delegating his authority, conflict with the Constitution of the United States. Not with the Blacklung Benefits Act, not with the Longshore Act, but with the Constitution. The holding in guidance, which Mr. Waldman relies on for the Board's constitutional authority, is limited. The Board has statutory authority to declare invalid a regulation that is not consistent with the Blacklung Benefits Act. That's not the case here. To fix the constitutional problem, the Board would have to set aside either civil service regulations, department policies that are inconsistent with the Constitution, nothing to do with the Blacklung Benefits Act, but the appointment's authority of an ALJ irrespective of whatever the Blacklung Benefits Act or Longshore Act says in a particular situation. That's far beyond the province of a non-Article III tribunal such as the Board, which is an executive agency. Judge, those are all the points I have to make. If there are any other questions. Thank you very much, counsel. Thank you all for your thoughtful arguments.